IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-441-BM

| | |
|---|---|
| JOHN BEAMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANK J. BISIGNANO, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **ORDER** |

Plaintiff John Beaman ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-17] ("Pl.'s Brief") seeking judgment in his favor and Defendant's responsive brief [DE-19] ("Def.'s Brief") in opposition. The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The parties have consented to entry of final judgment by a United States magistrate judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fourth Circuit. Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, the court allows Plaintiff's brief [DE-17], denies Defendant's brief [DE-19], and remands the case to the Commissioner for further proceedings consistent with this order.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability and DIB on January 14, 2022, alleging disability beginning March 15, 2021. Transcript of Proceedings ("Tr.") 80, 202-08.

His claim was denied initially. Tr. 80-89, 101-05. Plaintiff filed a request for reconsideration (Tr. 112), and was denied upon reconsideration on October 18, 2022 (Tr. 90-100, 113-17). On October 25, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 118-19. A hearing before the ALJ was held on April 3, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 41-79. On July 20, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 14-40.

On July 31, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 197-99. On May 31, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation

3

resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 36.

At step one, the ALJ determined that while Plaintiff alleged disability beginning March 15, 2021 (Tr. 80, 202-08), Plaintiff's employment between that date and December 14, 2021, could not properly be considered an unsuccessful work attempt as it exceeded six months and therefore constituted substantial gainful activity. Tr. 19. Nevertheless, the ALJ concluded that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity after this date. Tr. 20. Accordingly, the ALJ's findings relate to the period from December 15, 2021, through the date of the ALJ's decision. Tr. 19-20.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: chronic obstructive pulmonary disease with mild obstructive and interstitial lung disease; degenerative disc disease ("DDD"); mild degenerative joint disease of the shoulders; type II diabetes mellitus ("DM"); and obesity. Tr. 20. The ALJ also found Plaintiff had the following non-severe impairments: hypertension; gastroesophageal reflux/gastritis/dyspepsia; acute infections, such as gastroenteritis; bee sting; and herpes zoster/rash from a shingles type of infection. Tr. 20. Yet at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in

4

20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [H]e can only occasionally perform postural movements; he can frequently, but not continuously, finger; and he must avoid concentrated or frequent exposure to pulmonary irritants and hazards.

Tr. 25.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 26.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a material handler, retail store manager, ambulance driver, or corrections officer. Tr. 34. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 34-35.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred: (1) in her evaluation of Plaintiff's DM related

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

5

Case 5:24-cv-00441-BM   Document 20   Filed 09/25/25   Page 5 of 20

treatments, symptoms, and resulting limitations; (2) by improperly evaluating Plaintiff's limitations stemming from chronic pain due to severe lumbar DDD with spinal canal stenosis and neuroforaminal narrowing, fractured L4-5 vertebrae, and bilateral pars defects; and (3) in her evaluation of the medical opinion evidence. Pl.'s Brief [DE-17] at 1.[2] Each will be discussed below.

## VI. DISCUSSION

### A. Diabetes mellitus

Plaintiff contends that the ALJ erred in her evaluation of Plaintiff's DM related treatments, symptoms, and resulting limitations. Pl.'s Brief [DE-17] at 1. Specifically, Plaintiff claims that the ALJ improperly suggested that "any symptoms he was experiencing due to DM were his own fault as he was noncompliant with treatment." *Id.* at 7 (citing Tr. 27-30). The Commissioner counters that "the ALJ . . . highlighted the Plaintiff's inconsistent compliance with medication, while acknowledging the overall favorable treatment records that demonstrated significant improvement when the Plaintiff did engage in treatment." Def.'s Brief [DE-19] at 7 (citing Tr. 27-34). The Commissioner also argues that "Plaintiff's lack of medical insurance, the cost associated with purchasing cigarettes, coupled with the Plaintiff's decision to continue smoking against medical advice, calls into question his claim of being unable to afford treatment." *Id.*

> SSR 16-3p provides that:
>
> if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.
> . . .

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

> [Yet the ALJ] will *not* find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

SSR 16-3p (Oct. 25, 2017).

One reason for an individual's failure to seek treatment may be that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.*

In her decision, the ALJ noted that:

> [Plaintiff] has been noncooperative with recommended treatment. For example, he continued to smoke daily per recent emergency room notes and notes from primary care provider NP [Jacob] Hines [("NP Hines")]. He has not pursued limited smoking cessation, or various drug company or community resources for prescriptions to control hypertension and diabetes even though he has been advised of the risks of not better controlling glucose level. Nothing in the record shows that the claimant has been unable to access various charity care or drug company programs for indigent people in order to obtain his prescriptions. While he may not have qualified when working, it appears that the claimant has sufficient resources or household income to preclude having applied for Title XVI, which might suggest limited resources. Thus, the undersigned finds no valid basis for the claimant's failure to comply with treatment recommendations for diabetes and hypertension medications.

Tr. 32.

Plaintiff contests the ALJ's finding that he "has not pursued limited smoking cessation" (Pl.'s Brief [DE-17] at 7 (citing Tr. 32)), noting that "he has tried Chantix and has scaled back his smoking to less than half of his original usage" (*id.* (citing Tr. 490, 996)). Medical records from NP Hines on November 23, 2021, report that Plaintiff came "to receive a counseling visit on tobacco use so insurance will cover nicotine patches/gum." Tr. 458. Those records also notes that Plaintiff "smokes 1 pack of cigarettes per day[,] . . . started smoking when he was 15-17 years old[,] . . . [p]ast treatments include nicotine gum, nicotine lozenge and varenicline[,] . . . [t]he treatment provided minimal relief. Compliance with prior treatments has been variable. [Plaintiff]

7

is ready to quit. [Plaintiff] has tried to quit 3 times." *Id.*

Plaintiff also contests his alleged failure to "access various charity care or drug company programs for indigent people in order to obtain his prescriptions." Tr. 32. Plaintiff notes that records from a February 2, 2022 telephone appointment document that Plaintiff was "applying for disability claim[ and had an] appointment upcoming with social services" ostensibly to demonstrate that Plaintiff was seeking avenues to continue his treatment and medication, despite his alleged financial difficulties. Pl.'s Brief [DE-17] at 8 (citing Tr. 450). Plaintiff also cites records from NP Hines that, because Plaintiff was uninsured, NP Hines was attempting to get Plaintiff medications "through MAP [medication assistance program]." *Id.* at 8 (quoting Tr. 1071) (alteration in original). Plaintiff also suggests that NP Hines notes of "Med list updated and will send to NCMedAssist once he is approved" (Tr. 1102), indicate that Plaintiff did apply for NCMed Assist in 2022. Pl.'s Brief [DE-17] at 9.

The ALJ considered records documenting Plaintiff's "upcoming appointments with social services and social security" (Tr. 29) and that "his medication list would be updated and provided to NCMedAssist program when he was approved" (Tr. 30), yet she does not anywhere acknowledge Plaintiff's efforts at smoking cessation highlighted above (*cf.* Tr. 32) (ALJ claiming that Plaintiff "has not pursued limited smoking cessation").

In light of the court's remand for the reasons discussed below, the court makes no findings on whether this omission, standing alone, would constitute a sufficient basis for remand. On remand, the Commissioner should consider Plaintiff's argument here (Pl.'s Brief. [DE-12] at 5-12) and should ensure that her findings are supported by substantial evidence. It is, of course, up to the Commissioner to determine what weight to give all evidence. On remand, the Commissioner should make findings and provide sufficient explanation in order to permit meaningful judicial

8

review for substantial evidence, if necessary.

 B.     Chronic pain

Plaintiff contends that the ALJ improperly evaluated Plaintiff's limitations stemming from chronic pain due to severe lumbar DDD with spinal canal stenosis and neuroforaminal narrowing, fractured L4-5 vertebrae, and bilateral pars defects.  Pl.'s Brief [DE-17] at 1.  The Commissioner argues that "[t]his [c]ourt should reject Plaintiff's challenges to the RFC finding because the ALJ adequately explained her rationale and substantial evidence supports the assessment."  Def.'s Brief [DE-19] at 10.  The Commissioner also highlights that "[t]he ALJ noted that in June 2021, Plaintiff did not mention any pain associated with various musculoskeletal conditions during his visit to NP Hines."  Def.'s Brief [DE-19] at 13.

"A Social Security claimant's RFC represents 'the most he can still do despite his limitations.'"  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting 20 C.F.R. § 416.945(a)(1)).  In assessing an individual's RFC, an ALJ considers that person's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(4).  Further, "the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two."  *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020) (quoting *Monroe v. Colvin*, 826 F.3d 176, 178 (4th Cir. 2016)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).  The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."  *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir.

9

2015)). Indeed, "the ALJ's logical explanation is just as important as the other two [components] . . . and our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Additionally, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *McNeill v. Saul*, No. 5:20-CV-244-M, 2021 WL 3701348, at *3 (E.D.N.C. June 2, 2021) (alterations in original) (quoting *Mascio*, 780 F.3d at 636). And while there is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[,]" courts have found remand warranted where the ALJ fails to assess a "contested" function that is "critically relevant to determining [a claimant's] disability status . . . ." *Dowling*, 986 F.3d at 388-89 (remanding case where the ALJ failed to evaluate the plaintiff's ability to sit when it was a contested function critical to determining the plaintiff's disability status, and stating that the ALJ should have included "an analysis [of plaintiff's ability to sit] that was separate from the ALJ's appraisal of [the plaintiff's] ability to perform other functions, and [this analysis] should have been accompanied by 'a narrative discussion describing' the evidence supporting it").

The Fourth Circuit has held in *Oakes v. Kijakazi* that if a claimant's "medically determinable impairment . . . could reasonably be expected to produce [Plaintiff's] alleged symptoms," *cf.* 28 C.F.R. § 1529(c), a claimant may "rely exclusively on subjective evidence to

10

prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working." *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (second, third and fourth alterations in original) (quoting *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020). The Fourth Circuit went on to note that "[s]eparate and apart from his literal mobility, [Plaintiff] can qualify for benefits if he is in sufficient pain [and t]he ALJ failed to meaningfully address this theory of qualification such that this Court may engage in judicial review." *Id.* at 216.

Accordingly, while *contradictory* medical or other evidence may discredit Plaintiff's subjective statements regarding the limiting effects of his pain, a *mere absence* of medical evidence cannot, provided that objective medical evidence confirms that Plaintiff has a condition reasonably likely to cause the pain claimed. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) ("[B]ecause pain is subjective [it] cannot always be confirmed by objective indicia[.]") (second alteration in original) (quoting *Craig*, 76 F.3d at 595); *see also Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) ("Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day.").

The ALJ summarized Plaintiff's testimony that "he essentially sits in a chair or lays down throughout the day" and that "he cannot sit long or stand longer or walk more than short distances[, specifically 200 feet,] without his leg giving out." Tr. 26. The ALJ notes Plaintiff's allegations of pain including that "the sciatic pain causes tingling into his feet and weakness in the legs." Tr. 26.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

11

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 26.

The ALJ concedes that "[t]here is some objective basis for his spine pain" and cites medical findings supporting, *inter alia*, his [DDD] and foraminal narrowing. *Id.* at 26-27. The ALJ cites medical records from a December 30, 2021 pain clinic visit, in which Plaintiff "reported that he had been evaluation [sic] by Dr. Tucci, neurosurgeon, and Dr. Thomas, neurologist, for his gait complaints finding no acute concerns." Tr. 27. She concedes that "imaging reports must be correlated with clinical and other laboratory findings along with symptoms to appropriate assess the functional impact of such imaging studies." Tr. 27.

The ALJ appears to cite numerous medical records in support of her finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 26. The ALJ highlights that at an appointment on June 29, 2021, Plaintiff "had a fully unremarkable physical examination for all body systems[,] . . .displayed no palpable tenderness, had no sensory or reflex deficit, and normal muscle bulk, tone, and coordination[, and] . . . [t]here is no indication of any significant deficits in mechanical functioning." Tr. 27. The ALJ notes that the "neurologist did not see any evidence of underlying process or degenerative disease that would explain his symptoms and again noted his totally unremarkable neurological evaluation with no reflex changes, sensory level or lateralizing weakness." *Id.*

The ALJ also highlights that Plaintiff did not report pain to his primary care provider from April 2020 until August 16, 2021, when "he raised the new complaint of low back pain radiating down both legs and shoulder pain." Tr. 27. The ALJ summarizes September 28, 2021, reports by

12

Vidant Neurosurgery, which documented Plaintiff showed "diminished light touch and pin prick in all four extremities; and gait was antalgic, slightly wide based, and characterized by poor tandem walking[,] . . . palpation of the spine was positive for tenderness of the bony spine or the paraspinal musculature." Tr. 28. The ALJ tempers these findings, however, by noting that "the motor exam showed full and equal muscle strength throughout at 5/5 and no spasticity or rigidity." Tr. 28.

The ALJ also summarizes Plaintiff's physical rehabilitation records for September 30, 2021, which document Plaintiff's "subjective complaints of increased pain with standing and walking more than 500 feet or sitting longer than 30 minutes." Tr. 28. The ALJ highlights that these subjective limitations "indicates significantly better functioning than endorsed in [Plaintiff's] testimony [at the administrative hearing before the ALJ] wherein he indicated that he thought that he could only, perhaps, walk 200 feet." Tr. 28.

The ALJ documents that records from a November 2, 2021 visit to Carolina Family Health Centers for back pain proved "unremarkable for all body systems . . . other than tenderness to the cervical, thoracic, and lumbar spine and decreased range of motion." *Id.* The ALJ also emphasizes that there was "no mention of gait disturbance or use of an assistive device." Tr. 28.

Similarly, the ALJ notes that at the December 8, 2021 Carolina Family Health Centers visit for arthralgias of the shoulders and back pain, "the physical examination was again unremarkable in all respects for all body systems, normal range of motion, no neurological deficit, and no mention of gait/station deficit" (Tr. 28) and at the Carolina Family Health Center on January 27, 2022, that "other than decreased range of motion of the cervical spine and lumbar tenderness, the objective physical examination is, again, unremarkable and without focal neurological deficit found to be present." Tr. 29.

The ALJ also highlights a January 27, 2022 letter from NP Hines, which lists diagnoses of

13

neuropathy, degenerative disc disease spine, lumbar radiculitis, anterolisthesis, and a pars defect of the lumbar spine and prescribes a lifetime restriction "from all heavy lifting." Tr. 29 (citing Tr. 642). The ALJ noted that at a December 30, 2021 pain clinic visit for his gait complaints, the neurosurgeon and neurologist did not find any "acute concerns." Tr. 27. Finally, the ALJ also considered a December 7, 2022 Carolina Family Health Centers visit, at which Plaintiff complained of musculoskeletal arthralgia and back pain. Tr. 29. The ALJ emphasizes that the record noted that "[a]lthough the claimant is noted to be in no acute distress, he is then contradictorily noted to be 'visibly in pain.'" Tr. 29 (citing 1100). The ALJ claims that "the physical evaluation did not comport with acute significant pain" because Plaintiff:

> showed a normal range of motion including both feet, and no neurological deficit except for diminished or absent sensation in the right first digit of the right foot when administered a monofilament testing of both feet[,] . . . no foot lesions, no nailbed changes, and normal pulses for circulation in the feet[,] . . . no recorded observation of gait or station abnormality and no observed use of assistive devise noted.

Tr. 30.

The ALJ's assessment of Plaintiff's pain limitations does not satisfy the requirements of *Oakes*, *Arakas*, *Shelley C*.

As an initial matter, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding[, because s]uch omissions frustrate meaningful judicial review." *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Several characterizations of the medical record are lacking the necessary completeness. For example, the ALJ highlighting that Plaintiff did not raise any complaints of pain from April 2020 until August 16, 2021, conflicts with the ALJ's expressed intention that her "findings address the period(s) the claimant did not engage

14

in substantial gainful activity," which could begin no earlier than December 15, 2021. *Cf.* Tr. 20. Similarly, the June 29, 2021 visit notes cited above contain reports supportive of Plaintiff's allegations, including Plaintiff's report that "when he walks and [sic] Wal-Mart he will have to stop and start using a Motorized scooter." Tr. 314. December 30, 2021 pain clinic visit notes document that Plaintiff's pain was exacerbated, *inter alia*, by "changing from sitting to standing" and "sitting" and was alleviated by "[l]ying on back." Tr. 432. Notably, the treating physician did not suggest that Plaintiff's complaints of pain were fabricated and elected to continue Plaintiff's opioid treatment despite noting neurology findings of "no acute concerns." Tr. 431. Similarly, on December 7, 2022, despite his uninsured status, NP Hines had his pharmacy provide pain medications to Plaintiff because "he is acute pain and distress." Tr. 1102.

The ALJ discounts Plaintiff's allegations that he could walk 200 feet by noting records from September 30, 2021, where Plaintiff alleged "increased pain with standing and walking more than 500 feet or sitting longer than 30 minutes." Tr. 28. Yet the ALJ does not explore whether such a decrease might be in light of a deterioration in Plaintiff's condition. Indeed, the ALJ points out that Plaintiff only began reporting debilitating pain in August 2021 (Tr. 20), yet repeatedly reported back and other pain after that time. In addition to the September 30, 2021 records noted above, there are other records after August 2021 indicating that Plaintiff experienced pain as a result of prolonged walking. Tr. 450 (Records from January 27, 2022 visit with NP Hines reporting that Plaintiff's back pain is "aggravated by walking, standing and stress.").

Further, even assuming that the 500 feet of walking were the more reliable figure, the ALJ does not explain how this allegation can be reconciled with her findings that Plaintiff can stand or walk for a total of approximately 6 hours of an 8-hour workday. *See* S.S.R. 83-10 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours

15

of an 8-hour workday.").

The ALJ appears to discount Plaintiff's alleged limitations due to pain in light of findings such as "unremarkable physical examination for all body systems" (Tr. 27) and "normal range of motion, no neurological deficit, and no mention of gait/station deficit" (Tr. 28).

Specifically, the ALJ's claim that "the physical evaluation did not comport with acute significant pain" based on "normal range of motion . . . [limited] neurological deficit[s] . . . . no foot lesions, no nailbed changes, and normal pulses for circulation in the feet[,] . . . no recorded observation of gait or station abnormality and no observed use of assistive devise" (Tr. 30) squarely contradicts the holding in *Oakes* that a Plaintiff may rely solely on subjective experience as evidence of his pain. The fact that providers noted Plaintiff to be "visibly in pain" despite finding his medical constitution to be "in no acute distress" (Tr. 1100) rather than suggesting a contradiction (*cf.* Tr. 29) supports the finding from *Shelley C.* that "because pain is subjective [it] cannot always be confirmed by objective indicia[.]"). *See Shelley C*, 61 F.4th at 360. In short, Plaintiff's allegations that he experienced limitations due to pain in his spine after prolonged sitting or walking does not inherently require that pain limited his motor strength or range of motion. *See Shepherd v. O'Malley*, Civil Action No. 0:23-5201-RMG, 2024 U.S. Dist. LEXIS 222272, at *5 (D.S.C. Dec. 9, 2024) (finding that under *Arakas* the ALJ improperly dismissed Plaintiff's alleged pain limitations based on "'objective medical evidence' [which] showed normal ambulation, gait, and motor strength, 'good fine and gross motor skills,' and relatively normal range of motion.").

Additionally, Plaintiff reported to his medical providers that he would lie on his back or side to alleviate this pain. Tr. 432, 437, 563. He also testified at the administrative hearing before the ALJ that this is how he alleviated his pain while working as a corrections officer. Tr. 59. On January 27, 2022, NP Hines documented that "heat, ice and *rest*" were some of the treatments

16

Plaintiff used for his back pain. Tr. 450 (emphasis added).

The ALJ does not provide a limitation allowing Plaintiff to rest, as needed, on his back in the RFC, or, in the alternative, does not explain why no such limitation is necessary. The court finds that this issue could be outcome determinative as the VE testified that if Plaintiff needed an unscheduled break of 30 minutes to lie down to alleviate his pain, it could be work preclusive. Tr. 75.

The Fourth Circuit has held that "[s]eparate and apart from his literal mobility, [Plaintiff] can qualify for benefits if he is in sufficient pain [and t]he ALJ failed to meaningfully address this theory of qualification such that this Court may engage in judicial review." *Id.* at 216. *Oakes*, 470 F.4th at 216. The record here provides significant documentation of Plaintiff's pain, and the ALJ fails to provide adequate explanation on this theory of disability. Accordingly, remand is needed on this issue.

To be clear, the court expresses no opinion as to whether Plaintiff does or does not require additional limitations to accommodate his pain. The court only seeks to ensure that the ALJ properly addresses Plaintiff's allegations of pain in accordance with applicable case law. The lack of explanation and analysis in the ALJ's decision frustrates meaningful review by the court, as the court is left to guess at how the ALJ came to her conclusions.

Accordingly, this case is remanded to the Commissioner for further proceedings. On remand, the Commissioner should include a narrative discussion about how the evidence leads to each conclusion.

### C. Medical opinion evidence of NP Jacob Hines

Plaintiff contends that the ALJ erred in her evaluation of the medical opinion evidence of NP Hines. Pl.'s Brief [DE-17] at 1. The Commissioner counters that "[c]ontrary to Plaintiff's

17

assertions, the ALJ's decision demonstrates that he carefully considered the opinion evidence of NP Hines and properly found it not persuasive." Def.'s Brief [DE-19] at 17. Specifically, the Commissioner notes that "[i]t is well established the ALJ is not required to repeat her analysis with respect to every finding and sub-finding in the decision." Def.'s Brief [DE-19] at 17.

The ALJ considered an evaluation by NP Hines submitted on April 27, 2022, which opined that:

> [Plaintiff] can stand/walk one hour consecutively, and two or three hours cumulatively in an eight hour workday[, that Plaintiff had the] same capacity for sitting and for generally sustaining work activities[,] . . . that [Plaintiff] could lift no more than 10 pounds and that lower extremity strength would be limited to 5 pounds.

Tr. 33.

The ALJ notes that NP Hines "offered no explanation for the limitations other than to vaguely state that [Plaintiff's] 'multiple chronic medical problems prevent him from working the without pain or significant distress.'" Tr. 33. The ALJ found NP Hines' opinion unpersuasive. Specifically, the ALJ described that NP Hines' opinion was:

> inconsistent with the treating neurologist's normal physical findings and even with [NP] Hines own December 7, 2022 physical evaluation that showed normal range of motion on the musculoskeletal exam and a normal pulmonary evaluation of respiration. In fact, the sole concern was over the claimant's glucose level in the context of taking no prescribed medications on that visit. Moreover, [NP] Hines assessment of the claimant with a capacity to stand or walk one hour consecutively in a work setting dated on April 27, 2022, seemly directly contrary to his statement given three months earlier on January 27, 2022, that the claimant could not walk 200 feet without stopping for purposes of the state handicap parking application (Exhibit 9F). Again, suggesting that his opinion is based more on attempting to provide the claimant with whatever is the required medical opinion support to achieve a stated goal, instead of a professional assessment of this patient's functional capacity. Indeed, on the same date of January 27, 2022, he gave this claimant a letter stating a permanent restriction that listed only avoidance of heavy lifting (Exhibit 9F).

Tr. 33

Plaintiff argues that "[t]here are several problems with the ALJ's rejection of NP Hines's medical opinions." Pl.'s Brief [DE-17] at 18.

First, Plaintiff argues that "the ALJ tries to discount limitations due to pain from objectively verifiable causes in Mr. Beaman's severe DDD with stenosis and vertebral fracturing as well as diabetic neuropathy by citing to findings on [physical examinations] such as normal respiration and ROM which is in violation of *Oakes*." Pl.'s Brief [DE-17] at 18. Second, Plaintiff argues that the inconsistencies the ALJ cites in NP Hines' opinions are specious. *Id.* (citing *Ondeck v. O'Malley*, No. 0:23-cv-4784-MGL-PSG, 2024 WL 3879169, at *5 (D.S.C. July 31, 2024)). Plaintiff claims that NP Hines was "only speaking to lifting restrictions in January of 2022" and that his "conclusion that Mr. Beaman could only sustain work activities for one hour at a time and for three to four hours cumulatively while earlier opining that he needed a handicap placard due to his difficulty ambulating for more than 200 feet at a time are not necessarily in conflict either." *Id.* Plaintiff contends that "[t]o the extent that the ALJ felt there were inconsistencies, she should have recontacted NP Hines." *Id.*

The Commissioner argues that the ALJ properly found NP Hines' opinion lacked persuasiveness "as it contradicts the normal physical findings of the treating neurologist and even NP Hines's own physical evaluation conducted on December 7, 2022." Def.'s Brief [DE-19] at 18. The Commissioner also indicates that the inconsistencies identified by the ALJ are not specious. *Id.*

The court finds that substantial evidence supports the ALJ's determination that there are various inconsistencies in the limitations opined by NP Hines. Tr. 33. There is, therefore,

substantial evidence to support the ALJ's decision to lessen the persuasiveness assigned to NP Hines' opinion on this basis.

At the same time, the court's conclusion above that normal findings of range of motion and other unremarkable findings on physical evaluations do not necessarily contradict subjective allegations of pain resulting from Plaintiff's medically determinable impairments, which could cause such pain, apply with equal force here. Accordingly, on remand the ALJ should also consider portions of NP Hines' medical opinion related to the limiting effects of Plaintiff's pain in accordance with the dictates of *Oakes*, *Arakas*, *Shelley C.*, as discussed above.

## VII. CONCLUSION

For the reasons stated above, the court allows Plaintiff's brief [DE-17], denies Defendant's brief [DE-19], and REMANDS this matter to the Commissioner for further proceedings consistent with this order.

SO ORDERED, this 25th day of September, 2025.

                                              Brian S. Meyers
                                              United States Magistrate Judge